**IT IS ORDERED as set forth below:**

**Date: February 5, 2024**

_____

Jeffery W. Cavender
U.S. Bankruptcy Court Judge

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 21-58807-JWC |
| DARON TARRELL DAVIS, | CHAPTER 7 |
| Debtor. | |
| JOHN R. LEWIS, Chapter 7 Trustee for the Bankruptcy Estate of Daron Tarrell Davis, | ADVERSARY PROCEEDING NO. 23-5044-JWC |
| Plaintiff, | |
| v. | |
| JEREMIAH WOODS, BRIAN MICHAEL DOUGLAS, ANDREA HYATT, BRIAN M. DOUGLAS & ASSOCIATES, LLC, THRIVE MORTGAGE, LLC, LINDA MOORE, KELLER WILLIAMS REALTY FIRST ATLANTA, TABITHA CAVER, EXP | |

1

| REALTY, LLC and DARON TARRELL DAVIS, | |
|---|---|
| Defendants. | |

# ORDER

Before the Court is Jeremiah Woods and Thrive Mortgage, LLC's Motion to Enforce Settlement (Doc. No. 27) (the "Motion"). The Motion asserts that John R. Lewis, as chapter 7 trustee ("Trustee"), accepted an offer to settle his claims asserted in this adversary proceeding against Jeremiah Woods and Thrive Mortgage, LLC (together, "Defendants"). Trustee responded to the Motion and denies that an enforceable settlement agreement exists between him and Defendants. After considering the Motion, Defendants' brief in support, the Affidavit of Dylan W. Howard and exhibits (the "Howard Aff."), Trustee's response, the Affidavit of Neil C. Gordon and exhibits, and Defendants' reply, the Court finds no enforceable settlement agreement arose between the parties and will deny the Motion.

## A. Background and Factual Findings

This adversary proceeding arises from the chapter 7 bankruptcy case of Daron Tarrell Davis. Trustee alleges, in brief, that Mr. Davis sold certain real property belonging to the bankruptcy estate to defendant Jeremiah Woods without authority from Trustee or this Court. Thrive Mortgage financed the purchase by Woods and purports to hold a mortgage on the property. Trustee asserts claims against what appears to be everyone involved in the case, including Woods, Thrive Mortgage, closing counsel, the real estate agents, and Debtor.

The specifics of Trustee's claims are not particularly relevant to the Motion.

2

What is relevant are several emails between Neil Gordon (counsel for Trustee) and Dylan Howard (counsel for Woods and Thrive Mortgage) in August of 2023 discussing settlement. Both Trustee and Defendants have included affidavits of counsel with their papers, and both attach and rely upon the same seven emails exchanged between August 3 and August 30. The Court considers the contents of those seven emails to be undisputed and dispositive of the issue.[1]

Mr. Howard sent the first email on the morning of August 3, 2023, in which he asked Trustee's counsel, "Can you get me a new number for a full and complete settlement with all parties please?" Howard Aff., Ex. A. Mr. Gordon responded the same day with an email stating, "the Trustee has authorized a gross settlement from all of the defendants in the above adversary proceeding in the amount of $87,000." *Id*. Mr. Gordon made clear that the offer expired at the close of business on August 14, 2023, unless accepted by all defendants. *Id*. The next email came from Mr. Howard on the morning of August 15, 2023—the day after Trustee's offer expired. Mr. Howard acknowledged that he was a day late but expressed his hope that Trustee would honor the settlement offer:

> I have authority to agree in full. My client will pay $87,000 in exchange for y'all, and if necessary the seller in his capacity as a pending debtor in the bankruptcy proceeding, ratifying the existing deed into Jeremiah Woods and releasing claims against Mr. Woods's vesting and Thrive Mortgage's security deed upon title. The title insurance company will make the payment and anticipate this being a settlement agreement that just involves the estate and my clients, so it should be dead simple. My client informs me they will need a W-9. My understanding is that there may be exemptions to this normal tax requirement that apply in

---

[1] Trustee attaches two additional emails dated August 31, 2023, and Defendants attach several emails from May of 2023.

3

> this situation. If so, please let me know which exemption you contend applies so that my client rep may pass it along to their tax people.
>
> Glad to be able to put this one to bed in as simple a manner as possible. Please confirm. If you have a settlement agreement form you've approved in the past that would be helpful. Otherwise I'll draft something for your review.

*Id.* Mr. Gordon responded a couple of hours later with a short email requesting clarification about whether the settlement covers the realtors or closing attorneys, and Mr. Howard responded soon after that it would not cover the realtors or closing attorneys, only his clients (Mr. Woods and Thrive Mortgage). *Id.* Later in the evening on August 15, Mr. Gordon sent an email central to this matter:

> Dylan, the trustee is willing to accept the $87,000 subject to checking with the estate accountant about the exemptions you mentioned below. This is in addition to the $30,000 earlier received from debtor out of approximately $72,000 he received at closing. The trustee's preference is to have a single settlement agreement whereby all defendants release the trustee and estate and its professionals, but the other defendants are not required to pay anything. In addition, your client would get an unsecured claim for $87,000 that will be subordinated to all other allowed claims in the case. All other claims are waived by your client and the other defendants. Upon payment in full and a final order approving the settlement agreement, the trustee would dismiss the lawsuit with prejudice. Please let me know if this would be acceptable.

*Id.* The next email came again from Mr. Gordon two weeks later, on August 30:

> In my email below, the trustee accepted the $87,000 offer subject to checking with the estate accountant. What we have learned is not good. . . . [T]he sale, although unauthorized, will nevertheless cost the bankruptcy estate $25,500 in tax liability. This means that the amount the trustee would need to settle this case is $112,500. If this is not an amount your client can pay in settlement, we will need to proceed with the lawsuit.

*Id.* The question before the Court is whether this chain of emails constitutes an

4

enforceable settlement agreement between Defendants Woods and Thrive Mortgage, on the one hand, and Trustee, on the other hand. Specifically, did Mr. Gordon's last email on August 15 accept the offer by Defendants to settle Trustee's claims against them for a payment of $87,000?

B. <u>Legal Analysis</u>

"The construction of settlement contracts is governed by the state law applicable to contracts in general. Here, Georgia law governs both whether there was a settlement agreement and the construction of any alleged settlement agreement." *First Am. Title Ins. Co. v. King (In re King)*, 604 B.R. 93, 96 (Bankr. N.D. Ga 2019) (quoting *Hopson v. Hopson (In re Hopson)*, 216 B.R. 297, 301 (Bankr. N.D. Ga. 1997)). "For an agreement to be binding, 'it should be clear that it is full and complete, covers all issues, and is understood by all litigants concerned.'" *In re King*, 604 B.R. at 96 (quoting *Thomas v. Phillips*, 240 Ga. App. 600, 602, 524 S.E.2d 298 (1999)); *see also Providers Benefit Life Ins. Co. v. Tidewater Group Inc. (In re Tidewater Group, Inc.)*, 8 B.R. 930, 931 (Bankr. N.D. Ga 1981). The agreement must be "definite, certain and unambiguous." *In re King*, 604 B.R. at 96 (quoting *In re Hopson*, 216 B.R. at 301). The party asserting the existence of a contract has the burden of proving its existence and its terms. *In re King*, 604 B.R. at 96 (citing *Torres v. Elkin*, 317 Ga. App. 135, 730 S.E.2d 518 (2012)).

"The consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition." O.C.G.A. § 13-3-2. "[A]n agreement between two parties will occur only when the minds of the parties meet at the same time, upon

5

the same subject matter, and in the same sense. . . . If there was in fact any essential part of the contract upon which the minds of the parties had not met, or upon which there was not an agreement it must follow that a valid and binding contract was not made." *In re King*, 604 B.R. at 96-97 (quoting *Thomas v. Phillips*, 240 Ga. App. 600, 603, 524 S.E.2d 298 (1999)). When deciding whether mutual assent or meeting of the minds occurred, courts can "consider the whole of the agreement and the surrounding circumstances, such as correspondence and discussions, and courts are free to consider such extrinsic evidence." *In re King*, 604 B.R. at 97 (citing *Frickey v. Jones*, 280 Ga. 573, 575, 630 S.E.2d 374 (2006)).

Attorneys may bind their clients to a settlement agreement, but the agreement must be in writing if the existence or terms of the settlement agreement are disputed. *See* O.C.G.A. § 15–19–5; *In re King*, 604 B.R. at 97; *In re Hopson*, 216 B.R. at 301; *Brumbelow v. Northern Propane Gas Co.,* 251 Ga. 674, 676, 308 S.E.2d 544, 547 (1983). Although the writing "ideally consists of a formal written agreement signed by the parties[,] letters or documents prepared by attorneys which memorialize the terms of the agreement will suffice." *Brumbelow*, 251 Ga. at 676. "Such correspondence must contain all of the material terms of the agreement, as a settlement does not exist until all of the essential terms have been agreed to." *In re Hopson*, 216 B.R. at 301 (citing *Moore v. Farmer's Bank of Union Point,* 184 Ga.App. 86, 87, 360 S.E.2d 640, 641 (1987)).

An alleged settlement agreement must meet the same requisites of formation and enforceability as any other contract. *In re King*, 604 B.R. at 97 (citing *Torres v.*

6

*Elkin*, 317 Ga. App. 135, 730 S.E.2d 518 (2012); *In re Hopson*, 216 B.R. at 301 (citing *Blum v. Morgan Guar. Trust Co.*, 709 F.2d 1463, 1467 (11th Cir.1983)). An answer to an offer "will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer." *In re King*, 604 B.R. at 97 (citing *Torres*, 317 Ga. App. at 141). The offer must be accepted "unequivocally and without variance of any sort." *Id.* If any new conditions are imposed, the response constitutes a counteroffer rather than an acceptance. *In re King*, 604 B.R. at 97. "It is therefore necessary to determine whether a response is conditioned on assent to an additional term or whether it was mere precatory language seeking confirmation of an aspect of the agreement." *Id.* "[L]anguage is properly characterized as 'precatory' when its 'ordinary significance imports entreaty, recommendation, or expectation rather than any mandatory direction,' and such language does not render a purported acceptance a counteroffer." *Id.* (quoting *Torres*, 317 Ga. App. at 141). "[W]hen an offeree's response makes acceptance conditional on the offeror's assent to an additional term, the response constitutes a counteroffer." *Id.* (citing *Torres*, 317 Ga. App. at 142).

With these principles in mind, the Court concludes Mr. Gordon's email on August 15 to be a conditional acceptance and counteroffer instead of an unequivocal acceptance of Mr. Howard's offer communicated earlier the same day. In the Motion, Defendants argue the essential terms of the agreement were (1) payment of $87,000 to Trustee, (2) the estate ratifying Woods's and Thrive Mortgage's interests in the property, and (3) dismissal of the adversary proceeding with prejudice. Motion, p. 2;

7

Reply, p. 3. Mr. Gordon's email does not unequivocally accept these three terms.

Trustee's willingness to accept the $87,000 payment amount was expressly conditioned on "checking with the estate accountant about the exemptions you mentioned below," and nothing in the record suggests that Trustee ever made acceptance final after checking with the accountant. The opposite happened—after checking with the accountant, the first communication from Mr. Gordon expressed Trustee's unwillingness to accept $87,000. Defendants argue the issue to be checked was an immaterial logistical matter of whether the estate must supply a W-9 to the title company. Defendants argue that had nothing to do with whether $87,000 was an acceptable number and could not have been a material condition to acceptance of $87,000. Defendants have a fair point given the substance of Mr. Howard's previous email and the fact that Trustee's previous offer of $87,000 was not conditioned on checking further with the estate accountant. But the Court will not ignore the plain language of Mr. Gordon's email, which expressly made acceptance of $87,000 subject to checking with the estate's accountant. Perhaps Mr. Gordon misunderstood the exemption issue, or perhaps he intended to check on more than the W-9 exemption. Whatever the reason, the acceptance came with a condition, and nothing in the record indicates the condition was met prior to Mr. Gordon's email that Trustee would not accept $87,000.

Even if the Court construed the language about checking with the accountant as precatory and not conditional, other aspects of the email support the conclusion that no clear, unequivocal acceptance or agreement of all material terms occurred.

8

Mr. Gordon does not address, much less agree to, any terms regarding ratification of the deed to Mr. Woods or the security interest of Thrive Mortgage, an essential term to Defendants. Mr. Gordon also discusses several other terms that were not addressed in Mr. Howard's email, including Trustee's preference to have the settlement include all defendants and waiver of all claims by all defendants against the estate other than Mr. Howard's client having a subordinated claim of $87,000. The inclusion of all defendants in the settlement, and their waiver of claims, appears to have been material to Trustee, as it was an express condition of the previous offer made in Mr. Gordon's email on August 3 and reiterated in the August 15 email. Finally, Mr. Gordon concluded the email by asking, "Please let me know if this would be acceptable," which the Court construes to be more than precatory language regarding these additional issues, but a counteroffer with at least one fundamentally different deal attribute—the parties to the settlement.

All of these features of Mr. Gordon's email—a "willingness" to accept conditioned on checking with the estate accountant, the failure to address ratification of Defendants' interests in the property, the discussion of additional terms not included in Mr. Howard's email, and the request for Mr. Howard's further acceptance of these additional terms—leads the Court to conclude that Mr. Gordon's email on August 15 was not an unequivocal acceptance of the essential terms of an agreement and did not create a settlement agreement that was "definite, certain and unambiguous . . . full and complete and understood by all litigants concerned." *Cross v. Cook,* 147 Ga.App. 695, 696, 250 S.E.2d 28, 29 (1978).

9

Because the Court concludes no settlement agreement arose under Georgia law, the Court need not decide the question of whether approval by this Court pursuant to Bankruptcy Rule 9019 is necessary before binding Trustee to an enforceable contract. The Court notes only that case law appears to be divided on this issue. *See, e.g., Liberty Towers Realty, LLC v. Richmond Liberty, LLC*, 569 B.R. 534, 541-42 (E.D.N.Y. 2017) (noting split in authority on binding effect of unapproved settlements, citing cases, and finding "settlements requiring court approval are binding on all parties to the extent allowable under state law until the court considers and rejects the settlement").

### C. Conclusion and Order

For the foregoing reasons

IT IS ORDERED that the Motion is DENIED.

The Clerk is directed to serve a copy of this Order on all parties and counsel of record in this adversary proceeding.

END OF DOCUMENT